

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------X

UNITED STATES OF AMERICA,

     V.

                         Criminal No. 3:00 CR 217 (EEB)

TRIUMPH CAPITAL GROUP, INC.,
FREDERICK W. McCARTHY,
CHARLES B. SPADONI, LISA A.
THIESFIELD and BEN F. ANDREWS,     June 13, 2005

     Defendants.

-------------------------------X

# Declaration of Russell M. Gioiella, Esq.

     This Declaration is written in further support of Charles
E. Spadoni's pending motion for a new trial and provides the Court
with conclusive evidence -- not previously available to the defense
-- that the Government failed to produce material exculpatory
evidence as it was obligated to do under <u>Brady</u> and <u>Giglio</u>.

     Specifically, Paul Silvester, the Government's chief
witness at trial, has advised me that both he and, to his knowledge,
his attorney Hubert Santos, Esq., prior to the Indictment in this
case, provided the Government with oral proffers which completely and
unreservedly exonerate Mr. Spadoni from any wrongdoing.

     Mr. Silvester told me that in connection with his plea
negotiation, he prepared handwritten notes of his recollection of
several transactions (including Triumph) in which the Government was
interested. Mr. Silvester delivered the notes to Mr. Santos, who had

them transcribed <u>verbatim</u> into typewritten form. Mr. Santos told Mr. Silvester that he made a pre-cooperation agreement proffer in which he repeated the substance of those notes to the Government. Mr. Silvester further advised me that he too, when debriefed by the Government, told the Government the same information contained in his handwritten notes.

According to Mr. Silvester, and as corroborated by <u>contemporaneous</u> handwritten and typewritten notes, Mr. Silvester and, on information and belief, Mr. Santos, told prosecutors that in November 1999, Mr. Spadoni rejected Mr. Silvester's request that Triumph pay money to Mr. Stack and Ms. Thiesfield. According to Mr. Silvester's notes reflecting the substance of the proffer, Mr. Spadoni told Silvester that Triumph:

> ...would not pay any finder (sic) or
> offer employment to anyone connected
> to me in exchange for the deal
> [investment in Triumph]...Charlie said
> it would be <u>quid pro quo</u>, and he could
> not advise his boss to agree to it.
> Charlie said that Fred was sympathetic
> to the situation of certain staffers
> and they would be as helpful a
> possible after I left office but that
> it would have to be arm's length and
> make sense for Triumph. I said
> fine... [Emphasis supplied].

To this day, the Government has never advised us of this exculpatory statement by its lead trial witness. After Mr. Silvester advised me of his and Mr. Santos' proffer to the Government, I prepared an affidavit for Paul Silvester's signature. This affidavit was forwarded to Mr. Silvester and indeed was edited by him. He has

2

affirmed to me that the contents of the proposed affidavit (annexed hereto as Exhibit A) are true and that he would testify to those facts if subpoenaed to testify at any hearing or proceeding. However, he advised me that he did not want to execute the affidavit because he was concerned that there could be some adverse consequences to his community confinement status should the prison authorities learn that he had voluntarily executed an affidavit relating to a defendant in his case. Therefore, Mr. Silvester, and his counsel, Richard Reeve, Esq., advised me to file this affirmation in lieu of an affidavit from Mr. Silvester.

The contents of the affidavit and the attachments thereto, constitute clear and indeed overwhelming evidence of material Brady and Giglio violations in this action. One can hardly imagine more completely exculpatory information. Both before the cooperation agreement was signed, via an attorney proffer, and after Mr. Silvester became a cooperating witness, the Government was advised that in response to Mr. Silvester's request that Triumph pay a finder's fee, Mr. Spadoni told Mr. Silvester that there would be no "quid pro quo" -- indeed, that Triumph would make no promises in connection with the investment. Without an illicit agreement entered into before the investment was made, there could be no bribe. Obviously, this is precisely what the Government originally concluded when it decided, based on this information, not to charge Mr. Silvester with bribery. According to Mr. Silvester, he simply had not been bribed. Had the jury been aware that Mr. Silvester

3

expressly told the Government that he had not been bribed by Triumph, and had it credited Silvester's statement to the prosecutor as to what Mr. Spadoni told him, an acquittal was mandated.

The Government has not, on this motion, confirmed or denied that a pre-pleading proffer was made by Silvester's attorneys. Indeed, the Government stated only that the cooperation agreement was drafted without any information "from Silvester himself." When we pointed out in our papers that we thought that statement was carefully drafted to avoid stating whether they had gotten information about what Silvester would say from his attorney, via an attorney proffer, the Government simply never responded. We now know that the attorney proffer was made. This new evidence -- particularly in the absence of a denial by the Government -- is clear and convincing evidence that the proffer occurred. Nor can there be room for doubt as to the substance of the proffer. Mr. Silvester's handwritten notes were given to Mr. Santos for the express purpose of preparing him for the proffer. Mr. Santos had the notes transcribed into typewritten form for that purpose. The notes have been in the custody of Mr. Santos since before the proffer. The originals are still with Mr. Santos. No one can claim that Mr. Silvester is making up a story after his sentencing to help a co-defendant or hurt the Government.

Mr. Silvester will testify that in fact Mr. Santos told him that he recounted this information to the Government in an attorney proffer. Since Mr. Silvester prepared this information for his

4

attorney prior to his cooperation agreement, it only makes sense that his attorney and later he, himself, would convey that information to the Government on a proffer.

Most importantly, Mr. Silvester told this exculpatory information to the government when he was debriefed after his cooperation agreement was signed. Thus, there can be no doubt that the Government was advised of this exculpatory information, both from Mr. Santos and from Mr. Silvester. Yet, we were never provided with this crucial information.

The accuracy of Mr. Silvester's proposed affidavit is confirmed by Mr. Silvester's criminal Information, filed in September, two months after he began cooperating. This charging document conspicuously fails to charge him with bribery as to Triumph and Keystone, the two deals Silvester's handwritten notes reveal to be non-bribes because no promises were made to Mr. Silvester prior to the investment. In his notes as to both Triumph and Keystone, he essentially states there was no bribe because both attorneys (Glen Carberry for Keystone and Charles Spadoni for Triumph) advised him that they would not enter into a quid pro quo or make any agreements prior to the investment having been made. Sure enough, both Keystone and Triumph are described as mail frauds in this Information (relating to Silvester's motive to make the deal) but not bribes.

Mr. Silvester's affidavit and attached notes finally explain why it was that the Triumph deal was not charged as a bribe and why Silvester never pled to bribery involving Triumph. The

5

explanation could not be more exculpatory -- because -- according to the Government's star witness -- Mr. Spadoni made clear that Triumph would not make any promises prior to the investment having been made. Without a promise in advance of the investment, there can be no bribe.

The Court therefore must, in our view, grant Mr. Spadoni a new trial, as it is undisputed that we were never given these crucial exculpatory statements of Mr. Silvester, and it is likewise beyond peradventure that this information would certainly have resulted in a different verdict.

WHEREFORE, we respectfully request that the Court grant Mr. Spadoni's motion for a new trial.

Dated:     New York, New York
           June 13, 2005

                    Respectfully submitted,

                    LITMAN, ASCHE & GIOIELLA, LLP

          By:       _____
                    Russell M. Gioiella

                    Bar No. CT12688
                    Attorneys for Defendant
                      Charles E. Spadoni
                    45 Broadway Atrium
                    New York, New York 10006
                    (212) 809-4500

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Declaration of Russell M. Gioiella was served by Federal Express for overnight delivery on this 13th day of June, 2005, to the following counsel of record:

Nora R. Dannehy, Esq.
Assistant United States Attorney
United States Attorney's Office
450 Main Street
Hartford, Connecticut  06103


_____
Todd B. Terry

STATE OF CONNECTICUT )
                              SS.:
COUNTY OF NEW HAVEN    )

Paul Silvester, being duly sworn, deposes and says:

I make this affidavit at the request of counsel for Charles Spadoni. I understand that this affidavit is to be submitted to the Court in connection with a motion for a new trial which has been filed by Mr. Spadoni. If called as a witness at any hearing, I would testify as follows:

Prior to entering into any kind of plea or cooperation agreement with the Government in the summer of 1999, I provided my counsel, Hubie Santos, Esq. and Hope Seeley, Esq., with handwritten notes setting forth what had occurred with reference to nine (9) deals that I was involved in as Treasurer, including the Triumph deal which I did after the election. I gave these handwritten notes to my counsel to help them understand what had happened and so that they could use them in attempting to arrange a cooperation and/or plea agreement with the Government.

Hubie Santos advised me that he was going to give an "attorney proffer" to the Government in an attempt to work out a deal. After he met with the Government, he advised me that he had conveyed to the Government the information I provided concerning these various deals. He told me details of the Government's response to the proffer. Mr. Santos and I discussed them at length.

After my attorney's proffer to the Government, I was offered a cooperation and plea agreement. I accepted the terms and was debriefed by the Government on numerous occasions. When asked about Triumph, I told the Government the same information that was included in my handwritten notes and which my attorney had advised them of previously, together with additional information. Therefore, I can state with certainty that the Government was aware of this information in the summer of 1999.

Annexed hereto as Exhibit A is a copy of my handwritten notes which I recently received photocopied from Hubie Santos and Hope Seeley.

Annexed hereto as Exhibit B is a typed version of my notes, produced by Santos and Seeley at the time they received my handwritten notes to further assist them in their meetings with the Government. I also recently received copies of these typed notes from Santos and Seeley.

Annexed hereto as Exhibit C is a photocopy of handwritten notes concerning the subjects of an offer of proof which I also recently received from Santos and Seeley.

_____
Paul Silvester

Sworn to before me this
    day of May, 2005

_____
Notary Public

2