FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    04/20/2001

    Paul J. Silvester, date of birth: August 24, 1962, Social Security number: 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 was interviewed on various dates.

    Present during the March 17, 2001 meeting was Attorney Hope Seeley, representing Silvester; Assistant United States Attorneys (AUSAs) Nora Dannehy and Thomas Daily. Also present was Special Agent, IRS Criminal Investigation Division, Joseph McTague.

    Silvester was provided a copy of his Federal Grand Jury testimony to read and comment on any issues that needed clarification. Silvester commented as follows:

    On page 30 there appears to be a typo.

    On page 48, line 18, Silvester had a question regarding Lisa Thiesfield's physical presence during the conversation referenced. Silvester believed she was present at the party and either she was present for the conversation or she and Silvester spoke very shortly after the contribution to the Silvester campaign. Upon reflection Silvester concurred the testimony was accurate.

    On page 61, Silvester stated his testimony was accurate but he wanted to clarify the statement relating to Thiesfield's employment opportunities. Silvester stated he had a discussion with Thiesfield, prior to the election, about PaineWebber expressing an interest in her services. It was either David Pollock, Andy Girly (PH) or Joe Menito at PaineWebber who expressed interest. Silvester indicated that before the election everybody expected him to win and everybody wanted political access. After the election the interest evaporated. Silvester added William DiBella and Jay Malcynsky expressed interest in Thiesfield's services. Silvester stated somebody at Rowland's campaign, possibly Michael Chachetti (PH) expressed interest in Thiesfield, possibly in a lobby firm. Silvester believes his testimony is accurate.

    On page 98, he pointed out another typo.

---

| | | | |
|---|---|---|---|
| Investigation on | Various | at | Hartford, Connecticut |
| File # | 194A-NH-39127 | Date dictated | 04/19/2001 |
| by | SA Charles E. Urso:tfr | | PJSFGJ |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of __Paul J. Silvester__ , On __Various__ , Page __2__

    Silvester commented that he believes his Grand Jury testimony is truthful and accurate. The meeting lasted from 10:20 a.m. to 12:05 p.m.

    On March 24, 2001, Silvester and Attorney Hope Seeley came to the United States Attorney's Office. Also present were AUSAs Dannehy and Daily and Special Agent McTague. Silvester commented that he had an opportunity to think about the prior session and he had some thoughts he wanted to clarify of his Grand Jury testimony. He provided the following:

    On page 71, he wanted to revisit the issue of the number of conversations he had with Thiesfield about getting money from her. He initially recalled two specific conversations but he then acknowledged at least three. The first time he spoke to Thiesfield about getting money was when she received her first payment from Triumph. The second conversation was during at trip to/from Rhode Island to go to their accountant, who did their taxes and the third conversation was when Thiesfield gave him money to cover a political contribution check given to Yvonne Davis. Silvester stated that the phrase three times would be better than the word several, but then stated there may have been more than three conversations.

    Silvester stated he was concerned that Thiesfield's position at Park Strategies was being painted as a secretary. He stated the facts do not support that she was only a secretary.

    On page 56, Silvester wanted to add that he had a lengthy conversation with Spadoni about Thiesfield's status under state ethics laws. Silvester stated Spadoni may have informed him that Thiesfield wasn't in the Treasurer's Office when Triumph signed any of the contracts with Thiesfield.

    On page 14, Silvester wanted to clarify Thiesfield's duties. Silvester stated Thiesfield had marketing responsibilities at Park Strategies and she attended a couple meetings. He cited Thiesfield's attendance at the meeting in Boston where he attempted to get Triumph to hire Park Strategies and at a Park Strategies meeting with Tom Ritter to help Park Strategies promote the Apollo fund in Rhode Island. The meeting was held at Ritter's office at the law firm Brown Rudnick. Silvester stated Thiesfield was inexperienced in business development and he wanted to help train her. Silvester acknowledged Thiesfield didn't bring anything to the table that Silvester didn't cover.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of  Paul J. Silvester  , On Various , Page 3

    Silvester was then shown pages 1-20 of his FD-302 statement to read and comment. Silvester provided the following comments:

    On page two, last sentence, Silvester is not sure if there was a lawsuit but the firm backed off the idea of a lawsuit.

    On page four, third paragraph, Silvester did not give the three thousand dollars directly to his wife. The money went to pay expenses she incurred.

    On page seven, last paragraph, Silvester stated there was to be a person at First Albany to get credit for additional business but it may have been some project other than UCONN 2000. Also, Crowley was to get credit for an increased allocation of business directed to Smith Barney.

    On page eight, last paragraph, should read, while Andrews was at Smith Whiley.

    On page nine, second paragraph, Lemongellos spelling should be Lemoncellos or Limoncellos. Also there is a typo in the reference, in the sentence, Wilson indicated to Andrews that he understood, should be, Wilson indicated to Silvester that he understood.

    On page ten, last paragraph, Silvester stated Bailey was an old friend but not from college.

    On page eleven, second paragraph, Silvester wanted to clarify that he recalled the date of the telephone call from Wilson as June 3, 1998, after he reviewed records.

    On page thirteen, last paragraph, Silvester doesn't believe the $25,000 contract was his idea, it was either Thiesfield's or Spadoni's idea.

    On page fourteen, first paragraph, Silvester stated Pedro Johnson was a policeman at UCONN not a security guard.

    On page fifteen, second line, the phrase buyout option should be bond obligation.

    On page fifteen, Silvester wanted to clarify his statement that Thiesfield signed the Triumph contract before Stack.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of  **Paul J. Silvester** , On **Various** , Page **4**

Silvester stated his statement was based upon speculation because he is not sure when she signed the contract.

On page twenty, first paragraph, last line, Silvester wanted to clarify that he gave Thiesfield a hard copy of her retirement stuff.

The meeting went from 12 Noon until 3:40 p.m.

On April 3, 2001, Silvester and Attorney Hubert Santos met with the government. Present during the interview were AUSAs Dannehy and Daily and Special Agent McTague. Silvester was shown pages 20-40 of his FD-302 statement to read and comment. Silvester provided the following:

On page 21, last paragraph, Silvester stated the last sentence is unclear. It should read bigger, well-known investment firms may pay a lower fee and well-known marketing firms may demand a larger fee.

On page 25, last paragraph, Silvester stated Burnham restructured the pension fund.

On page 26, second paragraph, Connecticut bond fund should be Connecticut bond issue.

On page 27, the job possibility was in China not Chicago.

On page 29, second to the last paragraph, Silvester stated Devlin represented Thiesfield in the dispute and Silvester's conversation was with Arthur Anderson not Levine to stop the lawsuit. Silvester told Anderson it was not helping on the tax credit issue.

On page 30, third paragraph, Silvester stated the State became a shareholder in a limited liability company.

On page 31, second paragraph, last line, Silvester stated the word irked was better than angry.

On page 32, third paragraph, Silvester stated the information was received through Cohen not Droney's daughter.

On page 32, second paragraph, Silvester states the sentence, "Silvester tells a story...supporting Nappier", is

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of   Paul J. Silvester   , On  Various  , Page  5

unclear.  Silvester stated it should read as follows:  Silvester stated Droney was very experienced in running campaigns and conventions.  Droney stressed the importance of having Kennelly stay neutral to help Lecce through the campaign.  At one point, Droney represented he would support Lecce.  Ultimately Droney stated he was going to try and convince Lecce not to primary.

On page 37, last paragraph, Silvester stated he remembers New England Television news being at the Governor's mansion, it may have been the day of the Patriots story.  He is not certain of the purpose of the television coverage.

On page 38, first paragraph, the line should read Rowland did not change his position.

On page 39, third paragraph, with resolving should be to resolve.

On page 39, last paragraph, Powers was a close friend that raised funds for him but Powers did not run a fundraiser.  Also Renny Merritt worked for AEW, he was not a manager.

The meeting went from 5:10 p.m. to 7:48 p.m.

On April 10, 2001, Silvester and Attorney Hope Seeley met with the government.  Present during the interview were AUSAs Dannehy and Daily and Special Agent McTague.  Silvester was shown pages 41-49 of his FD-302 statement to read and comment.  Silvester provided the following:

On page 41, last paragraph, Silvester was mistaken the law firm was not Reid and Reige, but Lou Rome's firm.

On page 42, third paragraph, at a lower rate should be ratio.

On page 42, the fourth paragraph, the conversations referenced to Bill Howell were at the same meeting.

On page 43, last paragraph, Pat McCabe a former lawyer at Rogers and Wells.

On page 44, last paragraph, mostly bond traders should be municipal finance officials.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of  Paul J. Silvester  , On  Various  , Page  6

On page 45, fourth paragraph, Texas Instruments should be Texas Teachers Retirement and the reference to Youngblood hooking up with some Goldman Sachs people is true but not on election night.

On page 46, last paragraph, into page 47, Silvester stated the book of business involved equities and fixed income instruments.  The issue was brought to attention because of an overcharge not the lack of a request for proposal.  Draghi and McNeil were aware of the overcharge not the arrangement.  The auditors cited the lack of contract.  Burnham told Silvester to bury the overcharge issue.

On page 47, first paragraph, the following sentence should read:  Silvester stated under Burnham, Morgan Stanley handled a disproportionate share of business.

On page 47, third paragraph, Silvester did not meet Bush in 1994, Bush lost the election in 1994 and went to work for (FNU) Cadina.

On page 49, second paragraph, the spelling of Cafano should be Cafaro.  Also Cafaro was not running for office.  Silvester does not remember who was running.  The meeting was to discuss the challenger.  It was suggested to offer the challenger a job or some business.

The meeting went from 8:10 a.m. to 9:50 a.m.

On April 11, 2001, Silvester and Attorney Hope Seeley met with the government.  Present during the meeting were AUSAs Dannehy and Daily and Special Agent McTague.  Silvester was shown an FD-302 dated March 30, 2001, consisting of seven pages, to read and comment.  Silvester provided the following:

On page 3, first paragraph, the sentence "other issues may include allowing state/federal interest on bond handling", is unclear and should be removed.

The abbreviation KFR should be KKR.

On page 5, last paragraph, Silvester made the joke because Fox didn't know what to say.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of   Paul J. Silvester   , On Various   , Page 7

     On page 6, first paragraph, Fox was Rowland's Deputy Chief of Staff.

     On page 6, last paragraph, CDEA should be CDA and Silvester called Fox, should be, Fox called Silvester.

     On page 7, first paragraph, Al Weintraub was from Advest not the RNC.

     Silvester asked to review the section relating to the Walton transaction. After reading the section again, he acknowledged it was accurate.

     Silvester was asked if anything needed to be added or clarified. Silvester stated he believes everything has been covered completely and accurately.

     Silvester stated he has been staying at his residence in West Hartford. He hopes to obtain employment and spend some time in the Mystic area over the summer. He occasionally stays at an apartment in Harrison, New York, as he pursued teaching opportunities in New York. His cell phone has not been activated in months. He does check his voice mail at his West Hartford residence.

     Silvester was asked if he had spoken to Lisa Thiesfield. Silvester stated he called Thiesfield a couple weeks or a month ago from his grandmother's house, his grandmother had just come home from the hospital. He called Thiesfield's home number, 860-278-4031 from 860-563-3470. Silvester stated he was depressed and wanted to know how she was doing. He was concerned about her mother. Thiesfield told him it was stupid to call and they were not supposed to talk. The conversation was very short and they did not discuss the case.

     Silvester stated this is the only time he has spoken to Thiesfield since the indictment. He stated he has not used anyone to communicate with Thiesfield.

     Silvester stated he has not seen nor heard of the witness list. Silvester believes he heard that Jay Malcynsky was going to be a witness through Ed Daly, whom he believes is friendly with Malcynsky.

FD-302a (Rev. 10-6-95)

194A-NH-39127

Continuation of FD-302 of  Paul J. Silvester , On Various , Page 8

    Silvester was told of the government's position that he not meet or speak to anyone familiar or involved with the Triumph/Landmark case. Silvester acknowledged he understood.

    The meeting lasted from 8:10 a.m. until 10:15 a.m.