Source: News & Business > News > By Individual Publication > H > **The Hartford Courant**
Terms: **silvester and date(geq (10/3/99) and leq (10/6/99))** (Edit Search)

☞Select for FOCUS™ or Delivery

*THE HARTFORD COURANT, October 5, 1999*

Copyright 1999 The Hartford Courant Company
Hartford Courant (Connecticut)

**October** 5, 1999 Tuesday, STATEWIDE

**SECTION:** MAIN; Pg. A1

**LENGTH:** 1212 words

**HEADLINE: SILVESTER** SAYS DIBELLA WAS DOOR-OPENER;
FORMER TREASURER DESCRIBES DEALS WITH PAINE WEBBER

**BYLINE:** JON LENDER And MIKE McINTIRE; Courant Staff Writers
Courant Staff Writer Matthew Daly contributed to this story.

**BODY:**
Joseph Grano may be president of the financial giant Paine Webber Group Inc., but he still needed an introduction.

His company was looking to do a couple of hundred-million dollars' worth of pension fund business with the state more than a year ago, but first he needed someone to open the door to then-state Treasurer Paul J. **Silvester.**

The door-opener, as it turned out, was none other than his boyhood friend from the South End of Hartford: former state Sen. William A. DiBella.

At least that's the story that sources say **Silvester** has told in a secret statement to federal prosecutors, filed in conjunction with his Sept. 23 guilty plea to racketeering and conspiracy counts arising from his 17 months as treasurer.

The new allegations by **Silvester** provide insight into the corrupt official's commitment of $200 million in state employee pension fund investments to Paine Webber in December 1998, his last full month in office after losing the Nov. 3 election. Around that time, sources say **Silvester** was telling friends he expected to get a big job with Paine Webber -- which the company denies ever promising **Silvester.**

But the allegations go beyond **Silvester's** individual case. They also shine a light on the shadowy realm in which the smart guys of politics and business get together to play a game called special access -- in which they make the rules and they almost always win, often at taxpayers' expense.

And, in DiBella's case, the allegations add to his status as a prominent figure in the still-expanding **Silvester** corruption scandal.

In his years as the state Senate Democratic leader, DiBella was the sharp-dressed figure at the state Capitol with the swept-back mane of white. He carried an aura of mystery and an image as a subtle, behind-the-scenes dealmaker. With one foot in politics and one foot in business, he always seemed one step ahead of those who questioned the propriety of that straddling act.

That straddling act made DiBella a subject of speculation and a target of investigations during his years at the Capitol -- and, now that he has been retired from office nearly three years, it continues to place him in investigators' crosshairs.

For one thing, sources already have identified DiBella as one of five unnamed "associates" in a prosecution document that outlines episodes of irregularities and improprieties to which **Silvester** has admitted guilt. Sources say that DiBella is the "Associate B" who **Silvester** got a money-management firm to "compensate" in connection with an investment of state pension funds, according to prosecutors.

DiBella has not commented on that, but his lawyer has said he did nothing wrong.

Now, DiBella plays another prominent role in the case via the new statement that **Silvester** has made to prosecutors as part of a plea agreement under which he is cooperating in an ongoing federal corruption investigation. The secret statement is still under seal, but two sources familiar with it have shared its contents with The Courant.

Here, according to those sources, is what **Silvester** has told prosecutors:

* DiBella introduced him to Grano, whom DiBella knew from their upbringing in Hartford's heavily Italian American South End. **Silvester** and Grano hit it off, and Grano introduced him to the chairman of Paine Webber, which is the parent company for the well-known securities firm PaineWebber Inc. and the money-management firm Mitchell Hutchins. They talked about possible real estate and private equity deals.

* Some time later, DiBella asked **Silvester** to go to lunch with Grano and an unidentified real estate investment executive he had recruited, and they discussed a partnership that **Silvester** said he would have his staff check into. The evaluation was positive and they later began negotiating the deal. Grano asked **Silvester's** advice on attracting other pension funds to the deal, and **Silvester** said he should hire a professional to worry about that. Grano asked his recommendation, and **Silvester** named Potomac Advisors, a Maryland firm that marketed at least two deals with the treasurer's office for fees in recent years. Representatives of Potomac Advisors could not be reached for comment Monday.

* Grano asked if it would be necessary to pay the agency for the Connecticut deal, and **Silvester** said no, adding that there were other good investment-placement agents. Soon afterward, DiBella called **Silvester** to relate that Grano did not want to pay him a finder's fee for the Connecticut deal. Some time after that, **Silvester** said Grano told him he liked DiBella but was worried that if Paine Webber paid DiBella, it could hurt the company's reputation because DiBella had been investigated too many times in the past. Grano asked **Silvester's** advice on how to make things right with DiBella, and **Silvester** told him not to worry about it.

* **Silvester** said he asked a representative of another firm, who was familiar with placement fees, about helping DiBella. But there was no indication in **Silvester's** statement that anything came of it.

Asked for comment Monday, a Paine Webber vice president, Paul R. Marrone, issued a statement: "Paine Webber does not believe it appropriate to comment on statements allegedly being attributed to Paul **Silvester** in the course of a grand jury investigation that, as a matter of law, is supposed to be secret."

He said that Sept. 24, the day after **Silvester's** guilty plea, the company "issued a statement that Paine Webber did not employ or pay any consultant, finder or placement agent in connection with investments made by the state of Connecticut at Paine Webber. We add the

following clarification: Paine Webber at no time suggested or understood that anyone would be compensated on its behalf, either through an intermediary or otherwise."

Paine Webber has, in the past, used the services of Washington consultant Wayne Berman -- who hired **Silvester** in a new business- consulting firm after he left office last Jan. 6 -- but Marrone said Berman never worked or collected any fees on Paine Webber's Connecticut deals.

**Silvester's** successor, Democratic Treasurer Denise L. Nappier, canceled both of the $100-million commitments **Silvester** made to Paine Webber companies in December 1998. One of the companies, Mitchell Hutchins, still manages some state pension funds, though.

DiBella could not be reached for comment Monday night. When his lawyer, Hugh Keefe, was informed of **Silvester's** statements, he called it "a nothing story" that The Courant should not print.

**Silvester's** statement contains nothing "that remotely smacks of criminality," Keefe said, adding that "it's defamatory" to print it. "The impression is going to be left here that Bill DiBella did something criminal," Keefe said. "You're besmirching people's reputations who don't deserve to be besmirched. That goes for the governor and it goes for DiBella."

**Silvester's** new allegations to prosecutors also pointed a finger at Gov. John G. Rowland by linking at least one treasury investment to a promise of campaign contributions to the governor. Another investment deal allegedly was to provide a cash payment to a brother of a Rowland friend. Rowland continued Monday to emphatically deny that he or his aides had done anything wrong.

**GRAPHIC:** PHOTOS: (2 B&W) MUGS; PHOTO 1: GRANO; PHOTO 2: DIBELLA

**LOAD-DATE:** October 5, 1999

Source: News & Business > News > By Individual Publication > H > The Hartford Courant
Terms: **silvester and date(geq (10/3/99) and leq (10/6/99))** (Edit Search)
View: Full
Date/Time: Friday, August 5, 2005 - 2:45 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.