ATTACHMENT L

STATE OF CONNECTICUT

s: Stamford, Connecticut
COUNTY OF FAIRFIELD

**AFFIDAVIT**

I, Joseph Hutchison, being duly sworn do depose and state:

1. I was employed as an Assistant United States Attorney for the District of Connecticut from 1988 through 2000.

2. In the Fall of 1999, I was assigned to conduct an independent investigation into whether any government employee was responsible for or involved in leaking sensitive information that appeared in articles published by the *Hartford Courant* on October 3 and October 5, 1999. Although I was not ultimately able to determine who had provided the information in question to the *Courant*, I was able to determine that the probable source of the information was a privileged confidential document prepared by attorneys for Paul Silvester.

3. As part of my inquiry, I reviewed government files and records, and interviewed those involved in the investigation. I determined that these records and individuals were not the probable source of the information in question.

4. I interviewed Hubert Santos and Hope Seeley, attorneys for Silvester. I focused in speaking with Ms. Seeley on comparing the content of the articles with the materials Mr. Santos and Ms. Seeley had developed in preparation for their interactions with the government. In conducting this review, I did not look at or obtain copies of the privileged materials in the possession of Silvester's counsel. I reviewed with Ms. Seeley the information presented in the articles and asked her about the degree to which that information was similar to the information

1

presented in her privileged documents. Based on this review, Ms. Seeley and I concluded that the information in the articles closely resembled the content, language and organization of the information presented in the attorney notes prepared in anticipation of a proffer session with the government.

5. During this inquiry, I was sensitive to the need to avoid compromising the privileged status of these attorney notes. I was particularly aware of the ways in which even an inspection of limited scope, for a very limited purpose, could nonetheless be used to argue that a broad waiver had occurred, thereby vitiating the privileged status of materials and attorney-client discussions well beyond the scope of the initial disclosure. My sensitivity to this particular legal issue was heightened at this time by discussions with defense attorneys in an unrelated case in which my request for limited access to certain privileged materials had raised this very concern.

6. I had a general understanding of the scope and nature of the many branches of the Silvester-related corruption investigation. During this inquiry, however, I focused specifically on the limited subject matter of the articles. I did not become aware of any information of investigative value, exculpatory or incriminating, that was not already in the possession of the government team.

7. Because no information relating to Triumph Capital or Charles Spadoni was contained in the *Courant* articles, I had no reason to inquire into these subject matters during my independent investigation. I do not recall discussing such subject matters with members of the federal prosecutorial and investigative team, or with Silvester or his counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2005.

_____
JOSEPH HUTCHISON

3