UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:00-CR-217(EBB) |
| | : | |
| v. | : | |
| | : | |
| TRIUMPH CAPITAL GROUP, INC., | : | September 30, 2005 |
| CHARLES B. SPADONI | | |

**UNITED STATES' MOTION FOR PARTIAL RECONSIDERATION OF
RULING ON DEFENDANT SPADONI'S MOTION FOR
JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL**

By written ruling filed on September 16, 2005, the Court issued a ruling on defendant Charles Spadoni's motions for a judgment of acquittal and for a new trial [doc. #944]. In that ruling, the Court denied each of the defendant's requests, except that it granted his motion for a judgment of acquittal on Counts 1 and 2 (RICO and RICO conspiracy) on the ground that the government had failed to introduce sufficient evidence to prove that the defendant engaged in a pattern of racketeering activity. The Government respectfully submits this motion for reconsideration of that latter portion of the Court's ruling.

As the Court acknowledged in its ruling, the Government submitted extensive briefing in its earlier filing [doc. #684, dated July 7, 2003 - hereinafter "U.S. Resp. to Rule 29 Motion"] and addressed the defendant's claims at oral argument [Tr. vol. 14]. Ruling at 1. The Government will not repeat those arguments at length here, but will simply note that it believes the Court's analysis insufficiently accounts for two legal principles outlined in the Government's earlier filing. First, the Court's analysis of open-ended and closed-ended continuity discusses only evidence relating directly to the two racketeering acts found by the jury -- the November 1998 bribe and the obstruction of justice count. Ruling at 22-24. As the Government pointed out in its earlier filing, however, the totality of the evidence against all the members of the enterprise, and

not only the charged racketeering acts, may be considered as proof of the nature of the RICO enterprise and the threat of continuity. *See* U.S. Resp. to Rule 29 Motion at 31 (collecting cases). Accordingly, evidence of conduct by the defendant and other members of the enterprise preceding the November 1998 bribe should properly be considered in ascertaining the threat of continuity, as should evidence of such conduct that postdated Silvester's departure from office and the defendant's relinquishment of his computer. Second, assuming *arguendo* that the duration of the racketeering activity had been limited to 17 months, as found by the Court (Ruling at 25), such a duration constitutes a "substantial period of time" sufficient to sustain a finding of closed-ended continuity. The Government refers the Court to the various cases cited at pages 30-31 of its earlier brief, involving racketeering activity found to satisfy the pattern requirement despite their duration of less than one year.

  Perhaps most salient at the stage of reconsideration, however, is a factual inaccuracy contained in the Court's Ruling. At page 24, the Court states that "[t]he bribery scheme . . was 'inherently terminable' and 'essentially came to its conclusion,' . . . *at least by July, 1999, the last time payments were made under the consultant contracts*." Ruling at 25. This statement seems to refer back to a recitation of the facts on pages 23-24, where the Court states that "[t]here was no evidence of payment" from Triumph to Lisa Thiesfield under the illicit consultant contracts after July 1999. The Government did, however, introduce evidence that Lisa Thiesfield was in fact paid by Triumph the full million dollars called for in the consultant contract (which the jury found, and this Court has agreed, constituted a corrupt payment for purposes of the § 666 and mail/wire fraud charges), plus some. Specifically, the Government introduced the Thiesfield contract itself (Gov't Ex. 35), which on its face showed that payments were to continue for three

years. The Government also introduced unequivocal evidence that those payments were, in fact made. On June 30, 2003, the Court admitted into evidence Government's Exhibit 301, which was a series of bank account statements for Lisa Thiesfield showing that she had received over one million dollars from Triumph Capital from June 1998 through December 2001. *See* Tr. Vol. 11 (6/30/03) at 201-05. Special Agent Joseph McTague also testified in summary form, using summary chart Exhibit 332, about these transactions. *Id.* at 206 (testifying about flow of $1,126,002 from Triumph Capital Group to LAT, LLC).

    This fact points up the continued nature of the racketeering activity over a significant period of time. Even if one were to accept the Ruling's assumption that the racketeering activity began in November 1998 (a conclusion with which, as noted above, the Government respectfully disagrees), the jury received unchallenged documentary evidence, in the form of authenticated bank records, that the bribe payments continued to Lisa Thiesfield until at least December 2001 -- making the charged corrupt activity stretch out for *more than three years*.

    Of course, the Government introduced ample evidence that the members of the enterprise -- including defendant Spadoni -- were doing more than paying Lisa Thiesfield during this time period. They were also engaged in a host of obstructive activities, extending far beyond the allegations of Count 24. For example, after Silvester left office, he went to work for a company named Park Strategies, and Triumph Capital arranged to pay Silvester approximately $12,000 per month, through an arrangement designed to hide Silvester's relationship with Triumph. Triumph was to hire Ben Andrews at $15,000 per month, of which Andrews would relay $12,000 to Silvester. *See, e.g.,* Tr. vol. 5 at 136-43. This deal never came to fruition because of this criminal case coming to light. *Id.* After grand jury subpoenas were served on Triumph in 1999,

defendant Spadoni told Silvester about a program designed to purge documents from computers, and informed Silvester that he (Spadoni) wanted the draft contracts between Silvester's firm (Park Strategies) and Ben Andrews to "disappear." *Id.* at 158-61.  Spadoni himself was busily destroying documents at regular intervals on his computer.  As the forensic evidence showed, Spadoni had used Destroy-It! to eliminate incriminating files from his laptop computer on multiple occasions, as late as December 28, 1999.  U.S. Resp. to Rule 29 Motion at 20.  At about the same time, in June 1999 after grand jury subpoenas began to issue, the defendant himself also sought to coordinate with Christopher Stack to cover up the sham nature of his consulting contract.  6/16/03 Tr. at 68-69 (Spadoni "had indicated that the Grand Jury had been convened, the Government was conducting an investigation, and that I should get a lawyer, and it was time to get to work").  The Government introduced Exhibit 25, a letter written by the defendant to Stack on June 4, 1999, sending Stack information about the Triumph Connecticut funds for the first time.  6/16/03 Tr. at 69-70.  The defendant and McCarthy met with Stack about ten days thereafter, in a transparent attempt to make it look as though Stack's contract was a legitimate one.  *Id.* at 70-73.  When Stack's cooperation became known, he was promptly terminated by Triumph.  *Id.* at 76-79.  By contrast, the evidence showed that co-defendant Lisa Thiesfield was never cut off.  It would be apparent to any rational juror that Triumph's money was payable only to those who kept their mouths shut.

      In short, the evidence at trial showed that the defendant and other members of the enterprise undertook a concerted effort to bribe the Connecticut State Treasurer, and to engage in obstructive conduct to conceal that scheme.  This was not a simple one-shot bribe; it was more than an envelope of cash delivered during one brief meeting in a dark alley.  It involved

installment payments scheduled for three years to two of the Treasurer's cronies. When a federal grand jury came knocking, the defendant and his co-conspirators took steps to keep their crimes hidden. The defendant encouraged Silvester to get rid of incriminating documents linking Silvester, Andrews, and Triumph; he personally destroyed computerized documents using a special software program; and he directly participated in efforts to coopt Stack into the cover-up. Stack cooperated and was cut off. Lisa Thiesfield remained quiet, and collected her bribe money for three years. In short, the criminal conduct stretched on for more than three years, and involved both corrupt payments and obstructive conduct for this entire period.

All of these acts demonstrate a continuous pattern of criminal activity. This pattern posed an open-ended threat of continuing, as evidenced by the repeated obstructive acts that continued well after Silvester left office, and after a federal grand jury investigation became public. It also constituted a closed-ended period of criminal conduct over more than three years that presented continuous criminal activity. *See* Ruling on Motions to Dismiss by Hon. Alan H. Nevas dated Apr. 18, 2002 [doc. #439]*,* at 12-18 (upholding sufficiency of indictment with respect to continuity of racketeering pattern); *id.* at 16 ("Indeed, the nature of the alleged enterprise itself is sufficient to show a threat of continuity. Where, as here, 'the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity.'") (quoting *United States v. Diaz*, 176 F.3d 52, 72 (2d Cir. 1999)); *id.* at 16 ("Moreover, the nature of the alleged racketeering acts of bribery and obstruction of justice is inherently unlawful. This alone is sufficient to show the threat of continuity and would do so even if the time period spanned by the racketeering act were shorter [than two years].") (citing *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995));

*id.* at 16-17 (holding that "[m]erely because Silvester was defeated in his bid for re-election does not render the scheme a discrete and finite one that reached a natural end or one that had no inherent threat of continuing").

For the foregoing reasons, the Government respectfully requests that the Court grant its motion for reconsideration, and upon reconsideration, deny the defendant's Motion for Judgment of Acquittal with respect to Counts 1 and 2.

Respectfully submitted,

JOHN H. DURHAM
ACTING UNITED STATES ATTORNEY


NORA R. DANNEHY
ASSISTANT U. S. ATTORNEY
Fed. Bar No. ct01942


WILLIAM J. NARDINI
ASSISTANT U. S. ATTORNEY
Fed. Bar No. ct16012
157 CHURCH STREET, 23rd Floor
NEW HAVEN, CONNECTICUT 06510
(203) 821-3700
fax (203) 773-5377
william.nardini@usdoj.gov

## **CERTIFICATE OF SERVICE**

_____ This is to certify that a copy of this document was mailed and sent by facsimile on September 30, 2005, to:

Russell Gioiella, Esquire
Todd Terry, Esquire
Litman, Asche & Gioiella, LLP
45 Broadway Atrium
New York, NY 10006


_____
NORA R. DANNEHY
ASSISTANT U.S. ATTORNEY